57 P.3d 1102 (2002)
2002 UT App 314
STATE of Utah, in the interest of D.B., D.B., and M.V., persons under eighteen years of age.
T.B., Appellant,
v.
State of Utah, Appellee.
No. 20001022-CA.
Court of Appeals of Utah.
October 3, 2002.
*1103 Michael L. Humiston, Heber City, for Appellant.
Mark L. Shurtleff, Attorney General, and John M. Peterson, Assistant Attorney General, Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before Judges JACKSON, DAVIS, and ORME.

OPINION
ORME, Judge:
¶ 1 T.B. appeals from a juvenile court order terminating his parental rights to his daughter, D.B. He claims incarceration, alone, does not render him unfit as a parent. We affirm.

BACKGROUND
¶ 2 The relevant facts are not in dispute. The father has been incarcerated for most of his daughter, D.B.'s, life. In 1991, a few months before his daughter's birth, the father was returned to prison for violating the terms of his parole from prison on a prior conviction for attempted robbery and aggravated assault. Then, beginning in 1995, the father served eighteen months in prison for attempted possession of a controlled substance. And on February 4, 1997, the father was incarcerated again on a four-year sentence for attempted robbery. In 1999, at the time of trial in this case, the father's anticipated release date was February 6, 2001.
¶ 3 The daughter is one of three sisters who share the same mother, but who each has a different father. In August of 1997, the Department of Child and Family Services (DCFS) removed the daughter and her two sisters from their mother and placed them in protective custody. The three girls were later returned to their mother under the supervision of the court and DCFS. However, again in February of 1998, the girls were taken into protective custody, and the three have been living with the same foster family since March of 1998.
¶ 4 On November 2, 1998, DCFS petitioned the juvenile court for termination of the mother's and the three fathers' parental rights. The mother's rights to all three daughters were terminated on June 28, 1999. The parental rights of the other two fathers have also been terminated.
¶ 5 As to T.B., the father in this case, the court found that he was unfit, pursuant to Utah Code Ann. §§ 78-3a-407 and -408(2) (Supp.2002)[1]. The court based this finding on subsection 78-3a-408(2)(e) (Supp.2002), which provides that in determining parental fitness, the court is required to consider, in the case of a child in DCFS custody, the incarceration of a parent for a felony conviction when the incarceration will deprive the child of a normal home for more than one year. The court also found that termination of the father's parental rights was in the daughter's best interest. Accordingly, on December 3, 1999, the juvenile court terminated the father's parental rights to his daughter. The father now appeals.

ISSUE AND STANDARD OF REVIEW
¶ 6 The father contends the juvenile court's termination of his parental rights was improper. "In reviewing a decision to grant or deny a termination petition, `[w]e will not disturb the juvenile court's findings and conclusions unless the evidence clearly preponderates against the findings as made or the court has abused its discretion.'" In re R.A.J., 1999 UT App 329, ¶ 6, 991 P.2d 1118 (quoting In re M.L., 965 P.2d 551, 559 (Utah Ct.App.1998)). More specifically, the father appears to argue that proof of the circumstances outlined in Utah Code Ann. § 78-3a-408(2)(e) (Supp.2002) is not, alone, sufficient to support a finding of parental unfitness. This contention raises an issue of statutory construction. "Matters of statutory construction are questions of law that are reviewed for correctness." Platts v. Parents *1104 Helping Parents, 947 P.2d 658, 661 (Utah 1997).

ANALYSIS
¶ 7 As we have previously held,
Utah law requires a court to make two distinct findings before terminating a parent-child relationship. See In re M.L., 965 P.2d [551, 561 n. 13 (Utah Ct.App.1998)]. First, the court must find that "the parent is below some minimum threshold of fitness," such as finding that a parent is unfit or incompetent based on any of the grounds for termination under section 78-3a-407 of the Utah Code. Id. (citation omitted); see Utah Code Ann. §§ 78-3a-406(3) and 78-3a-402(2) (1996); In re S.T., 928 P.2d 393, 399 (Utah Ct.App.1996). Second, the court must find that the best interests and welfare of the child are served by terminating the parents' parental rights. See Utah Code Ann. §§ 78-3a-406(3) and 78-3a-402(2); see also In re M.L., 965 P.2d at 561 n. 13.
In re R.A.J., 1999 UT App 329 at ¶ 7, 991 P.2d 1118 (footnotes omitted).

Unfitness
¶ 8 As to the first part of this two-step analysis, Utah Code Ann. § 78-3a-407(1) (Supp.2002) states: "The court may terminate all parental rights with respect to a parent if it finds any one of the following:... (c) that the parent is unfit or incompetent[.]" As to what a court must consider when examining parental fitness, Utah Code Ann. § 78-3a-408(2) (Supp.2002) states, in relevant part:
In determining whether a parent or parents are unfit or have neglected a child the court shall consider, but is not limited to, the following circumstances, conduct, or conditions:
...
(e) with regard to a child who is in the custody of the division, if the parent is incarcerated as a result of conviction of a felony, and the sentence is of such length that the child will be deprived of a normal home for more than one year....
¶ 9 The juvenile court in this case found the father to be unfit, based on the existence of the circumstances described in subsection (e). The father does not dispute that the daughter was already in DCFS custody, that he was convicted of a felony, and that due to his resulting incarceration the daughter would be deprived of a normal home for more than one year. Rather, the father suggests that the conditions described in subsection (e) are insufficient, by themselves, to justify a finding of parental unfitness. We disagree.
¶ 10 The gist of the father's argument is that "there is no appellate authority for the proposition that incarceration for a period of more than a year, standing alone, is sufficient to justify termination of parental rights." This argument reflects a misconstruction of subsection (e). The plain language of subsection (e) does not allow for termination of parental rights based on "incarceration for a period of more than a year, standing alone." Rather, it allows for termination of parental rights in the much more narrow circumstance where a child, already in DCFS custody, will continue to be "deprived of a normal home for more than one year" as a result of her parent's felony conviction. Utah Code Ann. § 78-3a-408(2)(e) (Supp.2002) (emphasis added).
¶ 11 In other words, when the child of a convicted felon remains in, or will soon return to, her "normal home," despite the parent's incarceration, the fact that the parent may be incarcerated for over a year does not, by itself, justify termination of that parent's rights under subsection (e).[2] Only in cases akin to this one, where the other parent's rights have been terminated or restricted and the daughter is in the custody of DCFS and placed other than in her normal home, *1105 can a court rely on subsection (e) to find that a parent's incarceration renders him unfit. And in reality, it is the child's deprivation of a normal home for a period of more than a year that renders the incarcerated parent unfit, not the incarceration itself.[3]
¶ 12 Our decision in In re E.H., 880 P.2d 11 (Utah Ct.App.1994), is instructive. In E.H., due to incarceration for a felony offense, the "appellant was unavailable to parent [his] children ... [for] nearly eight years." Id. at 14. Although subsection (e) was not in effect when E.H. was decided, we held that "lengthy unavailability to parent" a child due to incarceration may be sufficient to support a finding of unfitness because "termination is proper when [a] parent is [either] `unable or unwilling to perform the duties and responsibilities of a parent.'" Id. (quoting In re K.S., 737 P.2d 170, 172 (Utah 1987)) (emphasis in original). Additionally, as in this case, in E.H. the father's incarceration meant that "`neither parent ... [would] be able to provide permanency for any of the children in the foreseeable future.'" Id. (emphasis added). Thus, even absent the statutory mandate of subsection (e), incarceration of a parent that deprives the child of a normal home for a "lengthy" period of time may alone support a finding of unfitness. See id.
¶ 13 Given the plain language of subsection 78-3a-408(2)(e), relevant precedent, and the fact that the father does not contest the juvenile court's finding that his felony conviction and subsequent incarceration deprived the daughter, who was already in DCFS custody, of a normal home for over a year, we do not disturb the juvenile court's finding that the father is unfit under subsection 78-3a-408(2)(e).[4]

Best Interest of the Child
¶ 14 "[T]he juvenile court properly bifurcated the issues of parental unfitness and best interest of the child." In re R.A.J., 1999 UT App 329, ¶ 8, 991 P.2d 1118. Upon separate consideration of the daughter's best interest, the court determined that termination of the father's rights was in fact in the daughter's best interest. The father does not contest the court's findings in support of that determination.
¶ 15 Specifically, the court found that the daughter "has adjusted very well in her foster home"; she "sees her family as her foster family and does not see her biological parents as her family"; "it is best to keep [the daughter and her sisters] together"; and "[t]he foster parents want to adopt all three girls." The court also found that the father last saw the daughter in 1997 and that the last time the daughter lived with the father was for four or five months in 1994. Given these undisputed subsidiary findings, we cannot say the evidence preponderates against the juvenile court's ultimate finding that it is in the daughter's best interest to terminate the father's parental rights, or that the juvenile court exceeded its discretion in ordering that those rights be terminated. See id. at ¶¶ 11-17.[5]

*1106 CONCLUSION
¶ 16 A juvenile court's proper determination of the existence of the precise circumstances described in Utah Code Ann. § 78-3a-408(2)(e), properly construed, is sufficient to support a determination of parental unfitness. Accordingly, we do not disturb the court's determination that the father is unfit. Furthermore, we see no abuse of discretion in the court's termination of the father's parental rights, given the undisputed findings underlying the court's determination that termination is in the daughter's best interest.
¶ 17 Affirmed.[6]
¶ 18 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and JAMES Z. DAVIS, Judge.
NOTES
[1] As a convenience to the reader, and because the provisions in effect at the relevant times do not differ materially from the statutory provisions currently in effect, we cite to the most recent statutory codifications throughout this opinion.
[2] This is not to suggest that incarceration in other circumstances can never be considered in determining parental fitness. See Utah Code Ann. § 78-3a-408(2) (Supp.2002) (stating the juvenile court "is not limited to" consideration of only the "circumstances, conduct, or conditions" enumerated in this section); In re M.L., 965 P.2d 551, 558 (Utah Ct.App.1998) ("Utah case law does not support the ... proposition that repeated criminal activity and incarceration occurring after a parent has been the subject of DCFS referrals and treatment plans and after a child has been removed from the parent's custody, is insufficient to support a claim of parental unfitness.") (emphasis in original).
[3] Thus, a felon convicted and sent to prison for many years could not have his parental rights terminated under subsection (e) if his child is not in DCFS custody, or possibly, even if in DCFS custody, simply went on living in the care of other relatives.
[4] The father also contests the juvenile court's separate finding, pursuant to Utah Code Ann. §§ 78-3a-407 and -408(1) (Supp.2002), that the father abandoned the daughter. Because of our resolution of the father's claim regarding unfitness, we need not address the abandonment issue. See Utah Code Ann. § 78-3a-407(1)(Supp.2002) (stating "[t]he court may terminate all parental rights ... if it finds any one" of a number of grounds) (emphasis added); In re M.W.H., 794 P.2d 27, 30 (Utah Ct.App.1990) (declining to "consider the issue of parental unfitness" because the court resolved the case on the basis of abandonment).
[5] As we have previously held,

a juvenile court judge has considerable discretion in weighing evidence presented pursuant to a petition to terminate parental rights....
It is, of course, the responsibility of the juvenile court judge to hear and consider the evidence presented by the parties to the action, and to weigh it. It falls exclusively on the judge to decide whether or not the evidence presented rises to the level of clear and convincing proof of the facts alleged. In reaching this determination, the trial judge is required to consider the quality and quantity of proof presented, and to arrive at a conclusion about whether or not it is sufficient. This evaluation is at the very heart of judging, and is the reason cases of this nature are tried to a judge. It is also the reason that society seeks men and women of good judgment and wisdom to serve as trial judges.
In re R.A.J., 1999 UT App 329, ¶¶ 11-12, 991 P.2d 1118.
[6] The father also argues the State has violated federal law requiring that adoptions of children whose parents' parental rights have been terminated be finalized expeditiously. The father contends that because of this claimed violation "the termination of [his] parental rights [should] be vacated." The father does not, however, dispute that "[t]he State, as a general rule, will not proceed with an adoption until an appellant has exhausted his appellate rights." The father will not be heard to complain about the alleged inaction of the State regarding the daughter's permanency when his own appeal is the main reason adoption has been delayed.